UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTONIO PAYNE,

        Plaintiff,              Case No. 2:12-cv-312

v.                                   Honorable Gordon J. Quist

DANIEL HEYNS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim.

### Factual Allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC)

Director Daniel Heyns and the following AMF employees: Warden Michael Curley, Hearing Officer S. Burke, Hearing Investigator Julie Green, Accountant T. Minton, and Grievance Coordinators T. LaPlante and J. Ansell.

Plaintiff's complaint concerns the restitution that he was ordered to pay for assaulting two officers at the Alger Correctional Facility in March 2010. After the assault, the MDOC transferred Plaintiff to the Baraga Maximum Correctional Facility. At AMF, Plaintiff received a major misconduct ticket for the assault and a misconduct hearing. On April 5, 2010, Hearing Officer Burke found Plaintiff guilty of the major misconduct ticket and sentenced Plaintiff to thirty days of detention and thirty days of loss of privileges. Plaintiff was also ordered to pay $1,997.20 in restitution to cover the medical costs of the officers. Soon thereafter, Plaintiff requested a rehearing to contest the restitution order but it was denied. Plaintiff argues that the restitution order violated his due process rights because the prison employees' insurance should have covered their medical expenses related to the assault. Plaintiff also complains that he never received a Notice of Intent to Conduct an Administrative Hearing in accordance with MDOC Policy Directive 04.02.105, Paragraph T (effective Jan. 1, 2010) for the removal of money from his trust account.[1]

The Alger County Prosecutor charged Plaintiff with assaulting a prison employee, Mich. Comp. Laws § 750.197c. On October 18, 2010, Plaintiff pleaded guilty to the charge. The Alger County Circuit Court subsequently sentenced Plaintiff to a prison term of two to five years. Plaintiff was also ordered to pay restitution of $128.00. Plaintiff's complaint, however, does not contest his conviction, sentence or restitution order by the Alger County Circuit Court for assaulting a prison employee.

---

[1] Plaintiff cites Paragraph S of a prior version of MDOC Policy Directive 04.02.105, which provided the same information as the current version of the policy directive at Paragraph T. (Compl., docket #1, Page ID#5); *see also* MDOC Policy Directive 04.02.105, ¶T. Because the relevant content of the two versions of the policy are the same, the Court will refer to the current version of MDOC Policy Directive 04.02.105 at Paragraph T.

On June 15, 2011, Plaintiff sent a memorandum to Hearing Investigator Julie Green requesting to review the medical bills related to his MDOC-imposed restitution order. Defendant Green denied the request because those documents were confidential. Greene stated "[t]he staff insurance may cover the charges, BUT you are charged to pay the coverage . . . ." (Compl., docket #1, Page ID#4.) Plaintiff complains that he should not have had to pay the employee's medical bills as they are covered by the employee's medical insurance.

On August 15, 2011, Plaintiff informed Accountant Minton that the MDOC was wrongly taking money out of his account under the label "property destroy." (*Id.*) Minton clarified that the debt was for the medical costs for the prison staff that Plaintiff assaulted.

On August 22, 2011, Plaintiff filed a Step I grievance for the "illegal taking of monies from his account." (*Id.*) Defendants LaPlante and Ansell, however, denied Plaintiff's Step I grievance as duplicative. Plaintiff filed a Step II grievance appeal stating that he never previously filed a grievance regarding his restitution. On September 7, 2011, Warden Curley denied Plaintiff's Step II grievance appeal. Plaintiff then filed a Step III grievance appeal alleging that AMF staff rejected his grievance to cover up the "unlawful restitution placed on his account." (*Id.*, Page ID#5.)

On May 21 and 31, 2012, Plaintiff wrote Defendant Minton that the MDOC was still taking money out of his account under the wrong property code. Minton eventually reported to Plaintiff that he corrected the code to indicate that the removal of the money was for the MDOC-imposed restitution order.

In summary, Plaintiff argues that Defendants violated his due process rights and conspired against him by ordering him to pay restitution for expenses that should have been covered by the assaulted officers' medical insurance. Plaintiff also argues that Defendants violated MDOC policy.

**Discussion**

I. <u>Immunity</u>

Plaintiff sues Hearing Officer S. Burke for ordering him to pay restitution. Defendant is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are attorneys who serve under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts, *see* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Because Defendant Burke is entitled to immunity, Plaintiff may not maintain an action against her for monetary damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Supervisory Liability

Plaintiff argues that MDOC Director Heyns wrongly consented to Defendants' actions regarding the restitution order. He also complains that Grievance Coordinators LaPlante and Ansell, and Warden Curley erroneously denied his grievance as duplicative. Government officials

- 5 -

may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns, LaPlante, Ansell and Curley engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

To the extent Plaintiff contends that Defendants LaPlante, Ansell and Curley violated his right to due process by rejecting his grievance as duplicative, he does not state a claim. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest

in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants LaPlante, Ansell and Curley's rejection of his grievance did not deprive him of due process.

In summary, Plaintiff fails to state a claim against Defendants Heyns, LaPlante, Ansell and Curley.

### B. Due Process Clause

Plaintiff argues that the order to pay restitution of $1,997.20 violated his due process rights. Plaintiff alleges that he did not receive notice prior to a fact-finding hearing for removal of his funds in accordance with MDOC Policy Directive 04.02.105. He also claims that he should not have to pay the medical bills for the injured officers when the charges were covered by the employees' medical insurance. Plaintiff, however, does not challenge the underlying major misconduct conviction for assaulting a prison employee.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of those interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Sixth Circuit has held that Plaintiff has a protected property interest in his inmate trust fund account. *See Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997). Consequently, Plaintiff may not be deprived of his prison trust account funds without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The due process of law gives the person notice and an opportunity to be heard before he is deprived of any significant property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust*, 444 U.S. 277, 284 n.9 (1980)); *see also Wolff*, 418 U.S. at 563-68 (minimal due process protections required before a prisoner may

be deprived of a *liberty* interest are notice, written statement of reasons for the action, and an opportunity to be heard).

First, Plaintiff received notice of the misconduct charge against him through his Major Misconduct Report dated March 30, 2010. (*See* Ex. A to Compl., docket #1-2, Page ID#10.) The report described the misconduct violation in detail, noting that the staff involved were transported to Munsing Memorial Hospital for medical treatment. Because Plaintiff refused to sign the report, he was given a copy of the report by the MDOC staff. Accordingly, the Major Misconduct Report satisfied the notice requirement for due process.

Plaintiff, however, argues that he should have received notice according to MDOC Policy Directive 04.02.105, Paragraphs T, U (effective Jan. 1, 2010), which governs the removal of money from prisoner trust accounts. Plaintiff is mistaken. MDOC Policy Directive 04.02.105, Paragraphs T and U provide the following:

> Removal of Funds from Prisoner Trust Accounts
>
> T.   A fact-finding hearing shall be conducted pursuant to Administrative Rule 791.3310 by a facility hearing officer before funds are removed from a prisoner's trust account, *except* when due to one or more of the following:
>
> * * *
>
> 3.   *An order to pay restitution issued by a hearing officer for a major or minor misconduct.*
>
> U.   Prior to the Hearing, a Notice of Intent to Conduct an Administrative Hearing (CSJ-282) shall be completed and promptly sent to the prisoner; the hearing shall not be conducted by the person who issued the Notice . . . .

MDOC Policy Directive 04.02.105, ¶¶T, U (emphasis added). MDOC Policy Directive 04.02.105, Paragraphs T and U do not apply to Plaintiff's situation because he was ordered to pay restitution by a hearing officer for his major misconduct conviction. *See* Attach. D to MDOC Policy Directive 03.03.105D (effective Apr. 9, 2012) (permitting hearing officers to order restitution for a Class I

Misconduct). As previously stated, because Plaintiff received a copy of the Misconduct Report, the notice requirement was satisfied.

Moreover, Plaintiff received an opportunity to be heard and detailed reasons for Hearing Officer Burke's finding of guilt for the misconduct charge. Plaintiff's major misconduct hearing was held on April 5, 2010. While Plaintiff decided not to attend his misconduct hearing, he had the opportunity to call witnesses and present evidence. Furthermore, the Major Misconduct Hearing Report described the evidence and reasons for Hearing Officer Burke's findings, as follows:

**Reasons for Findings**:

Prisoner does not deny that he struck Officer Rogers in the head several times and struck Officer Ross in the head area. The video is consistent with the Misconduct Report. Prisoner's action was an intentional, non-consensual touching of another person done either in anger or with the purposes of abusing or injuring another. The officers received treatment at the hospital, per the medical information in evidence. Prisoner shall make restitution in the amount of $1997.20.

(*See* Ex. B to Compl., docket #1-2, Page ID#12.) Because Plaintiff caused Officers Rogers and Ross' injuries, it was entirely reasonable for Hearing Officer Burke to order Plaintiff to pay restitution for the officers' medical care.[2] As Plaintiff had an opportunity to be heard and received a written statement of the reasons for the misconduct conviction and restitution order, the remaining due process protections were satisfied.

In summary, Plaintiff received the minimal procedural safeguards to which he was entitled prior to the order to pay restitution. Therefore, Plaintiff fails to state a due process claim.

**C.     Conspiracy**

---

[2] Plaintiff complains that he did not receive any of the medical bills of the officers to verify the amount of restitution. Plaintiff, however, does not have a right to access the officers' medical information. Although inmates are generally entitled to the evidence against them, the Supreme Court has long recognized that "there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence." *Wolff*, 418 U.S. at 565. Personal medical information implicates the safety of the prison officers.

Plaintiff argues that Defendants conspired against him when they "falsified documents to illegally take money from Plaintiff['s] account . . . ." (Compl., docket #1, Page ID#7.) To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative. None of the allegations establish a link or agreement between the actions of the alleged conspirators. In the words of the Supreme Court, Plaintiff's allegations of parallel conduct, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556; *see also Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("[A] conclusory allegation that the defendants acted in concert . . . without more, fail[s] to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to

- 10 -

link any of the alleged conspirators in a conspiracy to deprive [plaintiff] of his civil rights."). Therefore, Plaintiff fails to state a plausible conspiracy claim against Defendants.

### D. State Law

Plaintiff argues that Defendants violated MDOC policy by ordering him to pay restitution. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's challenge to the enforcement of state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on immunity grounds and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  October 18, 2012                              /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE